Filed 5/5/22  P. v. Hearn CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTOPHER JAMES HEARN,<br><br>    Defendant and Appellant. | F081651<br><br>(Super. Ct. No. SC076841A)<br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Sharon G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Eric L. Christoffersen, Amanda D. Cary, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Levy, J. and Snauffer, J.

## INTRODUCTION

In 1999, a jury convicted petitioner Christopher James Hearn of the first degree murder of I.T. (Pen. Code,[1] §§ 187, subd. (a), 189, count 1) with the special circumstance petitioner committed the murder while engaged in the commission or attempted commission of robbery (§ 190.2, subd. (a)(17)(A)).[2] For this offense, the trial court sentenced petitioner to a term of life without the possibility of parole. (*People v. Hearn* (Feb. 4, 2002, F034832) [as modified Feb. 27, 2002] [opn. ordered nonpub. May 1, 2002, S105347] (*Hearn*).)

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95. The trial court initially found petitioner made a prima facie showing pursuant to section 1170.95 and issued an order to show cause. However, after a motion for reconsideration, the trial court denied the petition on the ground the special circumstance finding made petitioner ineligible for resentencing as a matter of law.

On appeal, petitioner contends the trial court erred in finding that the special circumstance finding excluded him from resentencing relief. We conclude the special circumstance finding is dispositive thereby making petitioner ineligible for resentencing relief as a matter of law. Accordingly, we affirm the trial court's order denying resentencing relief pursuant to section 1170.95.

## FACTUAL AND PROCEDURAL BACKGROUND

We include the statement of facts from our prior opinion in petitioner's direct appeal in full:[3]

---

[1] Subsequent statutory references are to the Penal Code, unless otherwise indicated.

[2] Petitioner was convicted of additional offenses and enhancements, as described below.

[3] This court previously granted petitioner's request for judicial notice of this court's prior opinion in petitioner's direct appeal. We provide these facts because they

"On April 9, 1996, an off-duty sheriff's deputy entered [a liquor store] in Ridgecrest. He found the store's clerk, [I.T.], lying on his back behind the counter in a pool of blood. The deputy quickly left the store and called 911.

"[I.T.] had sustained three gunshot wounds, two to the head and one through his left arm. There were no powder burns, and the shots were fired from a large caliber gun, such as a .40 caliber. Five .40 caliber expended casings were found in the store and an additional casing was found on the victim's gurney. Police also found a glass pipe, lighter and colored ski mask near some dumpsters behind the store.

"Between 8:30 p.m. and 8:50 p.m. on April 9, witness Brian H[.] drove past the [liquor] store and three people ran in front of his car. They were wearing dark clothing and their faces were covered. [Brian] thought two of the people were male, between five feet, ten inches and six feet, two inches, and one was a female, much shorter, with a ponytail. He thought the person with a ponytail was carrying a backpack.

"**Annette R.'s Statements and Trial Testimony**

"Barstow police detective Frank Espinoza assisted the Ridgecrest police with the murder investigation. On December 5, 1997, he telephoned Annette R. (who was now living in Nevada) and asked her about the robbery and murder. He knew Annette R. because she had previously lived in Barstow and Detective Espinoza was familiar with her. He attempted to tape record the conversation, but only successfully taped portions of Annette R.'s initial statement to police. During the conversation Annette R. stated that she, [Barbara] Chavez, [Jeanette] Serafin and [petitioner] went to Ridgecrest to do a robbery. Serafin stayed in the car, and Chavez and Annette R. got out of the car with [petitioner]. [Petitioner] went into the store and there were gunshots, and [petitioner] shot the clerk in the head with a .38 or .357 caliber gun. Annette R. stated that she had better not be arrested or she would change her story and reveal nothing.

"Later that same day, Detective Espinoza taped another telephone conversation with Annette R. Annette R. stated she was outside the store when she first heard gun shots, and that she ran into the store and did not see the victim but thought he got shot in the head.

---

were relied on by the trial court. However, we do not rely on these facts in resolving the issues presented in this appeal. (See § 1170.95, subd. (d)(3).)

"On December 10, 1997, Annette R. was interviewed by Ridgecrest Detective Ortiz. She told Ortiz that she heard two different guns, and that the clerk shot first and then [petitioner] shot. She believed the victim was shot in the head, but everything was blurry. She stated that [petitioner] shot because the clerk shot first, and that she later heard rumors that [petitioner] said she was the shooter.

"At trial, Annette R. testified under a grant of immunity. On April 9, 1996, she was 15 years old and living in Barstow with Barbara Chavez. Chavez and Chavez's cousin Serafin returned to Chavez's house and told Annette they were going to 'pull a liq,' meaning a robbery. Annette R. agreed to participate. Serafin drove them to Chavez's cousin's house, a woman known to Annette R. as 'Gina Dean,' whose actual name was Regina Eason. Chavez told Eason they needed a male to go with them to do the robbery, and Eason suggested her brother, [petitioner], who was across the street. Annette R. went across the street to get [petitioner]. [Petitioner] agreed to go with them to Ridgecrest for the robbery, and Eason gave a gun to [petitioner] and a gun to Chavez. Annette R. was angry she was not given a gun. Eason was to receive a portion of the robbery loot in return.

"Serafin then drove Annette R., Chavez and [petitioner] to Ridgecrest. Chavez and Annette R. did not want to commit a robbery in Barstow because they had already been questioned about a previous robbery there. They drank beer and smoked marijuana during the car ride to Ridgecrest. Once in Ridgecrest, they stopped at Chavez's sister Dolores's house. They then went to the home of an unidentified man who suggested the [liquor store] as a robbery target. Chavez, Serafin, Annette R. and [petitioner] left to drive by the store. They had two ski masks and were all wearing dark clothing. [Petitioner], who is about six feet tall, had a ponytail.

"They drove back to Dolores's house and waited there until after dark. They then returned to the unidentified man's house to plan the robbery. Serafin was going to wait in the car by [a fast food restaurant] across the street, [petitioner] would enter the store with a gun and Annette R. and Chavez would enter the store after they had counted to three. Annette R. or Chavez would then duct-tape the clerk. All four of them participated in that conversation planning how the robbery would take place.

"The four then went to the liquor store, and Serafin dropped them off. The guns were in the backpack. [Petitioner] entered the store, and Annette R. and Chavez waited outside. Annette R. heard gunshots almost

4.

immediately. She ran into the store and saw [petitioner] shoot the clerk more than twice. [Petitioner] said 'Fuck you, Cuz,' and was leaning across the counter as he shot the clerk. [Petitioner] went around the counter and fired more shots. He then ran out of the store and Chavez and Annette R. ran with him back to Serafin's car.

"They drove back to Dolores's house, with [petitioner] and Annette R. lying down in the back seat and Chavez sitting in the front seat. [Petitioner] cried and said he did not mean to do it. They left Dolores's house and returned to Eason's house in Barstow. Chavez and Annette R. told Eason that the clerk had been shot, and [petitioner] said nothing but continued to cry.

## "Regina Eason's Statements and Trial Testimony

"Eason is [petitioner]'s sister. At trial she denied supplying any guns for the robbery and denied that [petitioner] and Chavez returned to her house together April 9th. [Petitioner] was drunk and did not arrive with Chavez, who arrived later. Eason did not recall Annette R. being at her house. Eason asked if anyone was killed, and Chavez told her [petitioner] had to shoot to protect them. Eason walked [petitioner] to his mother's residence, and then to his girlfriend April's house. Eason asked [petitioner] if he thought he had killed anyone and he said 'No.'

"Eason was interviewed by Detective Ortiz on December 31, 1997, and on February 24, 1998. Eason initially denied knowing anything, but later admitted she had given a gun to Chavez. She said [petitioner] was present when Chavez and the other girls asked him to participate in a robbery. The group returned and [petitioner] had been drunk and hysterical. Annette R. told [petitioner] he had killed the clerk. Eason stated she had difficulty understanding [petitioner] because he was so upset, but she thought he had shot someone while defending Chavez and Annette R.

"In a second tape-recorded interview of Eason she denied many of the statements she initially made. She stated that Chavez returned the gun she had given her because it did not work, and she had heard nothing about a robbery. She explained the change in her story by stating that she made the earlier statements in an attempt to make her brother look better in case he had done something wrong, but she did not know if any of it was the truth.

5.

## "J[ea]nette Serafin's Statements and Trial Testimony

"Serafin testified at trial under grant of immunity. Serafin testified that on the day of the robbery Chavez asked her to give her a ride to Ridgecrest. Chavez brought along Annette R. and a small Black man she had never seen before, called 'Tim.' She was unsure if [petitioner] was the person she believed was called 'Tim.' She dropped 'Tim,' Chavez and Annette R. off in front of the liquor store, and they returned a short time later upset. She did not recall what they talked about and did not recall seeing a gun or bullets.

"A prior interview of Serafin taped on December 5, 1997, was played for the jury. At that time Serafin stated that Annette R. and Chavez called the man with them 'Tim.' Serafin dropped Chavez, Annette R. and 'Tim' off in front of the liquor store and then heard shots. Chavez ran to Serafin's car and told her to start it. Serafin did not see a gun, but heard the three keep asking who shot first. Serafin described 'Tim' as about the same height as Chavez (short) and very thin.

"Serafin was interviewed again on October 20, 1998. The interview was also taped and played for the jury. At that time Serafin stated that Chavez wanted to borrow money from someone in Ridgecrest named Chris or Jay, and Annette R. came along for the ride. She did not know the name of the Black male who also rode with them. She dropped the three off on a corner where they left to go borrow the money. They told her to wait by [the fast food restaurant] so they could get something to eat on their way out of town. She waited 15 or 20 minutes, and heard three gunshots. Chavez came running to her car and seemed hysterical. Chavez and the male told her to drive. She never contacted the police because she was scared.

## "Dolores Chavez's Prior Statements and Testimony

"Dolores Chavez (Dolores), Barbara Chavez's sister who is also known as Nene, testified that she rode with Chavez, Annette R. and Serafin to Ridgecrest. She said a male accompanied them that the other girls called 'Chris,' but she could not identify [petitioner] as that person. She said the male was thin and had long hair. The group dropped her off at her apartment and returned about 9:00 p.m., two hours later than they had said they would return, and seemed in a rush. Chavez told her to hurry up.

"In a separate interview with detectives, Dolores gave a substantially similar statement, and said Chavez told her 'Chris' and Annette R. had

6.

done it. Dolores said any rumor that Chris had not entered the store was false, but that Chavez had never entered the store.

"**Other Testimony**

"Evelyn R[.], a relative of Barbara and Dolores Chavez and J[ea]nette Serafin, testified that she had a conversation with [petitioner]'s brother Frederick H[.]. Detective Ortiz testified [Evelyn] said that Frederick told her that [petitioner] told Frederick he was at the store the night of the shooting and had a gun but ran out of the store when he saw a gun, however, [Evelyn] denied the statement at trial. Frederick told Detective Ortiz that the information he (Frederick) had given to [Evelyn] he received from his and [petitioner's] father. Frederick has a mental problem, and sometimes hears voices.

"**Defense Case**

"[Petitioner]'s wife (then girlfriend) April and his mother both testified that [petitioner] was never gone from his mother's house for more than an hour or so in the weeks surrounding April 9, because April was due to have a baby. They testified [petitioner] never came home crying.

"Kenneth [H.] testified that before becoming imprisoned for a parole violation he asked Annette R. to watch four guns for him which were stored in a Nike bag. The bag also contained ski masks with holes cut out. When [Kenneth] was released from prison in July 1996, Annette R. told him the guns had been stolen. However, she later told him when she was drunk that she did not mean to do it, it was an accident and she did not 'mean to shoot the ol' boy.'

"Pamela [M.], a friend of Annette R.'s, testified that Annette told her about having committed a robbery like in the movie 'Menace to Society.' Annette R. said she and her 'homey' entered the store, she grabbed a '40 ounce' then went up to the store counter and started firing the gun.

"The defense presented the testimony of a forensic analyst that there was no evidence from the crime scene that the shots were fired from across the counter.

"Yolanda [J.] testified at Eason's trial that Annette R. had bragged about being the shooter in an attempted robbery at a liquor store.

"Analyses of head hairs from a ski cap found outside the liquor store ruled out [petitioner] as their source." (*Hearn*, *supra*, F034832, fns. omitted.)

7.

On April 2, 1999, the Kern County District Attorney filed an information charging petitioner with premeditated first degree murder (§§ 187, subd. (a), 189; count 1) with the special circumstances that the offense was committed during the commission or attempted commission of robbery (§ 190.2, subd. (a)(17)(A)) and burglary (§ 190.2, subd. (a)(17)(G)), along with a firearm enhancement (§ 12022.5, subd. (a)); second degree burglary (§§ 459, 460, subd. (b); count 2) with a firearm enhancement (§ 12022.5, subd. (a)); attempted robbery (§§ 212.5, subd. (c), 664; count 3) with a firearm enhancement (§ 12022.5, subd. (a)); and conspiracy to commit robbery (§§ 182, subd. (a)(1), 212.5, subd. (c); count 4)).

On December 16, 1999, a jury convicted petitioner of premeditated first degree murder (§§ 187, subd. (a), 189; count 1) and found true the special circumstance that the offense was committed during the commission or attempted commission of robbery (§ 190.2, subd. (a)(17)(A))[4], but found not true the firearm enhancement (§ 12022.5, subd. (a)). The jury was unable to reach a verdict on count 2; the court subsequently declared a mistrial on that count and the charge was dismissed on motion by the district attorney. The jury found petitioner guilty of count 3, but found not true the firearm enhancement (§ 12022.5, subd. (a)). The jury found petitioner guilty of count 4 and found true the overt acts that he planned a robbery and drove the other participants to Ridgecrest. However, as to count 4, the jury found not true the overt acts that petitioner obtained a gun from Regina Eason to use in the robbery and that he entered the liquor store in Ridgecrest.

---

[4] The jury did not make a finding as to the special circumstance that the offense was committed during the commission or attempted commission of burglary (§ 190.2, subd. (a)(17)(G)), and the court determined it was not necessary for the jury to make a finding as to that allegation in light of their inability to reach a verdict on count 2 (§§ 459, 460, subd. (b)). Therefore, we only address whether petitioner is ineligible for section 1170.95 resentencing relief, as a matter of law, based on the jury's true finding on the robbery special circumstance allegation pursuant to section 190.2, subdivision (a)(17)(A).

On January 19, 2000, the trial court sentenced petitioner on count 1 to a term of life without the possibility of parole.  As to count 3, the trial court sentenced petitioner to the upper term of 30 months, but stayed the sentence pursuant to section 654.  As to count 4, the trial court sentenced petitioner to the upper term of 5 years, but stayed the sentence pursuant to section 654.  On appeal, this court affirmed the judgment.  (*Hearn*, *supra*, F034832.)

On July 18, 2019, petitioner, in propria persona, filed a petition for resentencing pursuant to section 1170.95.  In the form petition, petitioner stated a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of first or second degree murder at trial; and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019.  He also requested the court appoint counsel during the resentencing process and stated he was convicted of first degree murder and could not now be convicted because he was not the actual killer; he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony; and that the murder victim was not a peace officer acting in the performance of his or her duties.

The court subsequently appointed counsel to represent petitioner.

In response, the district attorney filed a motion to dismiss the petition based on the unconstitutionality of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) and petitioner, through counsel, filed a reply arguing that the amended law was constitutional.  The trial court concluded Senate Bill No. 1437 is constitutional and denied the motion to dismiss.

9.

Subsequently, the district attorney filed a response to the petition on the merits, arguing the special circumstance finding established the jury had found petitioner to be a major participant who acted with reckless indifference to human life, rendering him ineligible for resentencing. Petitioner filed a reply arguing he had made a prima facie showing he is entitled to resentencing relief. Petitioner specifically argued our Supreme Court's holding in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), both filed after the jury's verdict, altered the standards for a "major participant" who acted with "reckless indifference to human life," and thus the special circumstance finding did not establish facts necessary to uphold his conviction for purposes of Senate Bill No. 1437. Petitioner subsequently filed a supplemental reply, expanding on his argument that he was not a major participant who acted with reckless indifference to human life under the standards announced under *Banks* and *Clark*.

On June 17, 2020, the trial court concluded that petitioner had made a prima facie showing and issued an order to show cause. In light of the trial court's finding, the district attorney filed a motion for reconsideration based on newly published case law; petitioner subsequently filed an opposition.

On August 21, 2020, the trial court granted the motion for reconsideration and found that petitioner had not established a prima facie case pursuant to section 1170.95. Specifically, the trial court reasoned:

> "In reviewing the most recent cases . . . the Court finds the *Galvan*[5] case the more persuasive and better reasoned Opinion. And it's also

---

[5] *People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*).

10.

significant that the *Galvan* Court distinguished and disagreed with the rulings in the *Torres*[6] and *Smith*[7] cases and explaining why.

> "And the Court finds the *Galvan* Opinion and the reasoning of that Opinion more persuasive, explaining that if the issue about whether there's sufficient evidence to support the special circumstance findings, the way it must be addressed now, in light of the change of the law after *Banks*[, *supra*, 61 Cal.4th 788] and *Clark*[, *supra*, 63 Cal.4th 522], is that the burden is on the defense in a habeas corpus proceeding to establish that there is not sufficient evidence to support that special circumstance finding in light of the new case law.

> "And the *Galvan* Court -- and I agree with their reasoning -- states that it would be inappropriate to shift the burden to the People to now have to prove that beyond a reasonable doubt through the 1170.95 proceedings. That would be inconsistent with the legislative intent, in looking at the language of the statute.

> "So I do find *Galvan* and *Gomez*[8] to be persuasive to reach a tentative decision to grant the motion for reconsideration and find that [petitioner] has not made a prima facie case as a matter of law." (Italics added.)

The court subsequently confirmed its tentative ruling, stating, "I do agree with the reasoning and the *Galvan* Court that Section 1170.95 is not the proper vehicle to challenge the special circumstance finding in this case and that the challenge would be properly brought as a writ of habeas corpus." The court further found petitioner ineligible for resentencing as a matter of law, and that he had not met his burden to establish a prima facie case. Accordingly, the petition was denied.

A timely appeal followed.

---

[6] *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted June 24, 2020, S262011 (*Torres*), abrogated on another ground by *People v. Lewis* (2021) 11 Cal.5th 952, 962-963 (*Lewis*).

[7] *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835 (*Smith*).

[8] *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted October 14, 2020, S264033 (*Gomez*).

# DISCUSSION

## I.    Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  The bill accomplished this task by adding three separate provisions to the Penal Code.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)  First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.)  Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[9]  (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above."  (*Gentile*, at p. 843.)  This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted

---

[9] Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer.  (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

murder under the natural and probable consequences doctrine, or manslaughter."
(§ 1170.95, subd. (a).)

"Section 1170.95 lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.)  First, an offender must file a petition in the sentencing court averring that:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]

> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]

> "(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a)(1)-(3); see § 1170.95, subd. (b)(1)(A); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel."  (§ 1170.95, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition.  (§ 1170.95, subd. (b)(2).)  Otherwise, counsel must be appointed, if requested.  (§ 1170.95, subd. (b)(3).)  The prosecutor must file a response and the petitioner may file a reply.  The trial court must then hold a hearing to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.)  In making this determination, the court may rely on the record of conviction.  (*Lewis*, at pp. 970-

971.) The record of conviction includes, but is not limited to, jury instructions and verdict forms. (See generally *id*. at p. 972.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at pp. 971-972.)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts." (*Gentile*, *supra*, 10 Cal.5th at p. 853; accord, § 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. The admission of evidence at the hearing is governed by the Evidence Code. However, the court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as well as the "procedural history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).) Hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of section 872 is inadmissible at the evidentiary hearing, unless made admissible by another exception to the hearsay rule. (§ 1170.95, subd. (d)(3).)

## II.    Analysis

Petitioner contends the trial erred in finding that the special circumstance finding automatically excluded him from section 1170.95 resentencing relief, as a matter of law. Specifically, petitioner argues that because the special circumstance finding predated both *Banks* and *Clark*, it is unclear whether a jury today would conclude that he was a "major participant" who acted with "reckless indifference to human life." Therefore, the jury's true finding on the special circumstance cannot automatically exclude him from relief. We disagree and conclude the special circumstance finding is dispositive thereby

14.

making petitioner ineligible for resentencing as a matter of law. Moreover, we conclude that *Banks* and *Clark* did not substantively change the language of section 190.2, subdivision (d) and that the proper vehicle to challenge a special circumstance finding is not through a section 1170.95 petition, but rather through a petition for writ of habeas corpus.

A. <u>The Special Circumstance Finding is Dispositive</u>.

To be eligible for relief pursuant to section 1170.95, petitioner must not have been the actual killer, must not have acted with the intent to kill or malice aforethought, and must not have been a major participant in the underlying felony who acted with reckless indifference to human life. (§§ 188, subd. (a)(3), 189, subd. (e), 1170.95, subd. (a)(3); see *Gentile*, *supra*, 10 Cal.5th at p. 842.) Here, as to the first degree murder count, the jury found true the robbery special circumstance (§ 190.2, subd. (a)(17)(A)). To find this special circumstance true, the jury was required to find that petitioner acted "with reckless indifference to human life and as a major participant" in aiding and abetting the commission of the underlying felony. (§ 190.2, subd. (d).) " '[T]he language of the special circumstance tracks the language of Senate Bill [No.] 1437 and the new felony-murder statutes.' " (*People v. Simmons* (2021) 65 Cal.App.5th 739, 747, review granted Sept. 1, 2021, S270048.) Therefore, by finding the special circumstance true, the jury made the requisite findings necessary to sustain a felony-murder conviction under the amended law. Petitioner is therefore ineligible for resentencing relief pursuant to section 1170.95, as a matter of law.

B. <u>A pre-*Banks* and *Clark* Special Circumstance Finding Pursuant to Section 190.2, subdivision (a)(17) Precludes Section 1170.95 Resentencing Relief as a Matter of Law</u>.

Nevertheless, petitioner argues that the special circumstance finding does not render him ineligible for resentencing relief as a matter of law. Specifically, petitioner cites *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 for the proposition

that these cases narrowed the legal meaning of "major participation" and "reckless indifference to human life." "*Banks* and *Clark* 'clarified "what it means for an aiding and abetting defendant to be a 'major participant' in a crime who acted with a 'reckless indifference to human life.' " ' [Citation.] *Banks* identified certain factors to consider in determining whether a defendant was a major participant; *Clark* identified factors to guide the determination of whether the defendant acted with reckless indifference to human life." (*Gomez*, *supra*, 52 Cal.App.5th at p. 13, fn. 5, review granted.) Courts of Appeal are split on the question of whether a special circumstance finding entered prior to *Banks* and *Clark* renders a petitioner ineligible for section 1170.95 resentencing relief as a matter of law (see *People v. Jones* (2020) 56 Cal.App.5th 474, 478-479, review granted Jan. 27, 2021, S265854 (*Jones*) [collecting cases]), and our Supreme Court has granted review to decide the issue (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606).

Courts which have held that a pre-*Banks* and *Clark* felony-murder special-circumstance finding bars section 1170.95 resentencing relief have reasoned that *Banks* and *Clark* merely clarified the law as it always was. (*Jones*, *supra*, 56 Cal.App.5th at pp. 482, 484, review granted; accord, *People v. Nunez* (2020) 57 Cal.App.5th 78, 92, review granted Jan. 13, 2021, S265918; *People v. Allison* (2020) 55 Cal.App.5th 449, 458.) These courts further note that our Supreme Court does not require juries to be instructed on the *Banks* and *Clark* clarifications. "Rather, while CALCRIM No. 703 now includes *optional* language drawn from *Banks* and *Clark* regarding the factors a jury *may consider*, '[t]he bench notes to the instruction state that *Banks* "stopped short of holding that the court has a sua sponte duty to instruct on those factors," and *Clark* "did not hold that the court has a sua sponte duty to instruct on those factors." ' " (*Nunez*, at pp. 92-93; accord, *Jones*, at p. 484; *Allison*, at pp. 458-459.) Thus, these courts found "no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently

than a post-*Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards." (*Nunez*, at p. 94.)

These courts have also held that an attack on a special circumstance finding in a section 1170.95 proceeding effectively constitutes a collateral attack on the judgment. (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142; *Gomez*, *supra*, 52 Cal.App.5th at p. 16, review granted.) According to these courts, a petitioner who wishes to argue the special circumstance finding is invalid under current law must first seek to invalidate that finding through a petition for writ of habeas corpus before seeking resentencing pursuant to section 1170.95. (*Galvan*, at p. 1142; *Gomez*, at p. 17; *Jones*, *supra*, 56 Cal.App.5th at p. 485, review granted.) These courts reason that a contrary interpretation "would read into section 1170.95 a new procedure allowing petitioners to ignore a special circumstance finding—no matter how well supported in the record—as well as the recognized method of challenging it. Such petitioners would be allowed to relitigate a prior jury finding at an evidentiary hearing where the prosecution bears the burden of proving the truth of the finding, beyond a reasonable doubt, a second time." (*Jones*, at p. 485.)

On the other hand, courts that have found a special circumstance finding insufficient to render a petitioner ineligible for relief have reasoned that *Banks* and *Clark* "construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute." (*Torres*, *supra*, 46 Cal.App.5th at p. 1179, review granted; accord, *People v. Harris* (2021) 60 Cal.App.5th 939, 958, review granted Apr. 28, 2021, S267802.) Thus, these courts surmised that a petitioner with a pre-*Banks* and *Clark* special circumstance finding may have been convicted based on "conduct that is not prohibited by section 190.2 as currently understood." (*Torres*, at p. 1180; accord, *Harris*, at p. 958; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954; *Smith*, *supra*, 49 Cal.App.5th at p. 93, review granted.) To the extent the jury's finding on a felony-murder special circumstance is legally

17.

insufficient under *Banks* and *Clark*, it cannot refute a prima facie showing of entitlement to resentencing relief.  (*People v. Secrease* (2021) 63 Cal.App.5th 231, 256, review granted June 30, 2021, S268862.)  Accordingly, in considering whether a petitioner is entitled to relief pursuant to section 1170.95, the trial court must first determine whether "the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*."  (*Secrease*, at p. 264.)

This court has decided to follow the line of authority holding that a special circumstance finding precludes relief as a matter of law.  (*People v. Simmons*, *supra*, 65 Cal.App.5th at pp. 748-749, review granted.)  *Banks* and *Clark* did not state a new rule of law.  Rather, they relied on the United States Supreme Court's decisions in *Enmund v. Florida* (1982) 458 U.S. 782 and *Tison v. Arizona* (1987) 481 U.S. 137 to clarify principles that had long been in existence at the time petitioner was convicted.  (See *In re Miller* (2017) 14 Cal.App.5th 960, 978; accord, *People v. Allison*, *supra*, 55 Cal.App.5th at p. 458; *Gomez*, *supra*, 52 Cal.App.5th at p. 13, fn. 5, review granted.)  *Enmund* prohibited felony-murder liability for a defendant that "did not commit the homicide, was not present when the killing took place, and did not participate in a plot or scheme to murder," and explained that, to be liable for felony murder, the aider and abettor must himself "kill, attempt to kill, or intend that a killing take place or that lethal force will be employed."  (*Enmund*, at pp. 795, 797.)  *Tison* held that, "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement."  (*Tison*, at pp. 151, 158.)  As *Banks* noted, this language from *Tison* was later codified by the California electorate in section 190.2, subdivision (d).  (*Banks*, *supra*, 61 Cal.4th at p. 800.)  To the extent *Banks* and *Clark* illuminated factors a fact finder might consider in determining whether a defendant was a major contributor who acted with reckless indifference to human life, they drew those factors from *Edmund* and *Tison*.  (See *Banks*, at pp. 801, 803; see also *Clark*, *supra*, 63 Cal.4th at pp. 615, 618-623.)  These principles existed when petitioner was convicted

18.

and, absent a determination on direct appeal or in habeas that the evidence was insufficient to support the jury's finding, there is no basis to conclude petitioner's jury applied different standards than those described in *Banks* and *Clark*.

Accordingly, petitioner is ineligible for resentencing on his murder conviction as a matter of law.

## **<u>DISPOSITION</u>**

The order dismissing petitioner's section 1170.95 petition is affirmed.

19.